IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**EMILY JAYNE STORY**                                                              **PLAINTIFF**

**v.**                                                           **CIVIL CASE NO. 3:22-CV-253-RP**

**KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY**      **DEFENDANT**

**OPINION AND JUDGMENT**

Plaintiff Emily Jayne Story has filed for judicial review pursuant to 42 U.S.C. § 405(g) following the unfavorable decision of the Commissioner of Social Security regarding an application for disability and disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provision of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. ECF #16. The undersigned held a hearing on October 4, 2023. Having considered the record, the administrative transcript, the briefs of the parties, the oral arguments of counsel and the applicable law, the court finds the Commissioner's decision is supported by substantial evidence and should be affirmed.

**Standard of Review**

In determining disability, the Commissioner, through the Administrative Law Judge ("ALJ"), works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove [she] is not currently engaged in substantial gainful activity.[3] Second, plaintiff must prove her impairment is "severe" in that it

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).
[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).
[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

"significantly limits [his] physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[7] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10] The Fifth Circuit has held that

---

[4] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).
[5] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).
[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).
[7] 20 C.F.R §§ 404.1520(g), 416.920(g) (2010).
[8] *Muse*, 925 F.2d at 789.
[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).
[10] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

## **Commissioner's Decision**

At step one of the sequential analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 6, 2015. At step two, he found that the plaintiff had the severe impairments of: degenerative disc disease of the cervical and thoracic spin, headaches, fibromyalgia, obesity, and right and left bicep tendonitis. At step three, he found that none of these impairments or combination of these impairments meets or medically equals a listed impairment. At step three, the ALJ determined that plaintiff has the residual functioning capacity ("RFC") to perform sedentary work, except:

> the claimant can lift and carry 10 pounds occasionally and less than 10 pounds frequently. She can sit for six hours in an eight-hour workday. She can stand and walk for two hours in an eight-hour workday. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. The individual must avoid heights and hazardous moving machinery. The individual is limited to occasional reaching overhead with the right and left upper extremities.

At step four, the ALJ found that the plaintiff was unable to perform any of her past relevant work. Finally, at Step 5, the ALJ found that through the date last insured, and considering the plaintiff's age, education, work experience, and RFC, there are significant numbers of jobs in the national economy that the plaintiff could perform, such as the jobs of assembler, lens inserter, and documents preparer. Accordingly, the ALJ concluded that the plaintiff was not disabled at any time from the alleged date of onset through the date last insured.

## Discussion

The plaintiff argues that the ALJ erroneously failed to give controlling weight to the July 31, 2017 RFC assessment submitted by the plaintiff's treating physician Stephen Shirley, MD, who, among other limitations, assessed reaching and manipulative limitations which the plaintiff contends would result in a finding of disabled if included in the RFC. Dr. Shirley opined the plaintiff is limited to reaching in all directions occasionally with the right upper extremity and rarely with the left upper extremity, to handling occasionally bilaterally, and to fingering and feeling frequently bilaterally. The ALJ found that the extent of these limitations assessed by Dr. Shirley is unsupported by his own examinations and is inconsistent with other medical evidence in the record. In his decision, the ALJ limited the plaintiff to occasional overhead reaching bilaterally, and the ALJ assessed no manipulative limitations.

According to the plaintiff, the ALJ failed to comply with this court's remand instructions with respect to Dr. Shirley's assessment, failed to conduct the required *Newton* analysis of Dr. Shirley's assessment, and failed to discuss certain medical evidence which the plaintiff contends supports Dr. Shirley's assessment. As such, the plaintiff argues, the ALJ's decision giving less than controlling weight to Dr. Shirley's assessment is unsupported by substantial evidence. The court disagrees.

As an initial matter, the court notes (and the parties acknowledge) that because the plaintiff's application for benefits was filed before March 27, 2017, the ALJ's consideration of medical opinions in the record is governed by the Commissioner's older regulatory framework for considering medical opinions set forth in 20 C.F.R. § 404.1527. The cases cited in this decision pertain to that framework.

In the ALJ's previous decision denying benefits before eventual remand of that decision by this court, the ALJ discussed his evaluation of Dr. Shirley's assessment as follows:

> The undersigned is cognizant that Dr. Stephen Shirley, one of the claimant's treating physicians, issued a medical source statement in which he limited the claimant to ten pounds of lifting and carrying as well as limiting her to rare reaching with one of her upper extremities. While Dr. Shirley's restriction to the claimant's upper extremity is internally consistent with his own treatment record and entitled to partial weight in this decision, the objective evidence in such record is not consistent with limiting the claimant to ten pounds of lifting.

However, even though he found Dr. Shirley's assessment limiting the plaintiff to "rarely" reaching with her left upper extremity to be consistent with his treatment notes and entitled to partial weight, the ALJ omitted from the RFC any reaching limitation of the plaintiff's left upper extremity. On appeal of the Commissioner's decision to this court, the court reversed and remanded the decision for further proceedings, stating as follows:

> On remand, the ALJ shall clarify the plaintiff's RFC in light of Dr. Shirley's assessment of plaintiff's left-arm restrictions as contained in his medical source statement. The ALJ shall also fully evaluate and explain the weight given to Dr. Shirley's opinion.

*Story v. Commissioner of Social Security,* No. 3:18-cv-252-DAS, ECF #21 (N.D. Miss. Sept. 25, 2019).

After conducting another administrative hearing on remand, in his decision denying benefits the ALJ discussed his evaluation of Dr. Shirley's assessment as follows:

On July 3, 2017, Stephen Shirley, M.D., submitted a medical source statement on behalf of the claimant, wherein he opined that the claimant could occasionally lift and carry 10 pounds and frequently lift and carry less than 10 pounds. He opined that the claimant was affected with operation of hands and/or foot controls. He opined that the claimant was limited in reaching in all directions. He opined that the claimant could occasionally reach and handle. She could frequently finger and handle with the right upper extremity. Dr. Shirley opined that the claimant could rarely reach, occasionally handle and frequently finger and feel with the left upper extremity (Exhibit 10F). Dr. Shirley's MSS is afforded only some or partial weight, because the extent of upper extremity limitations is not correlated with his examinations. The claimant was assessed with right and left biceps tendonitis and records in August 2016 showed her right bicep tendonitis was resolved. Further, the physical examinations within Dr. Shirley's own records, and those of other providers, continuously reveal only mild limitations in ranges of motion of the shoulders and arms and normal grip strength.

Contrary to the plaintiff's argument, the court finds that the ALJ complied with this court's remand order to clarify the plaintiff's RFC in light of Dr. Shirley's assessment of the plaintiff's left arm restrictions. Unlike in the ALJ's previous decision, in the present decision there is no contradiction between the left arm restrictions assessed by the ALJ and his critique of the upper extremity restrictions assessed by Dr. Shirley. No further clarification in that regard is necessary. The ALJ discussed all the limitations assessed by Dr. Shirley and explained that his opinion is afforded only some or partial weight because the extreme upper extremity limitations assessed by Dr. Shirley are unsupported by his own examinations and are inconsistent with other medical evidence in the record, specifically physical examinations by Dr. Shirley and other providers continuously showing only mild limitations in ranges of motion of the shoulders and normal grip strength. The court finds that the ALJ fully evaluated and explained the weight given to Dr. Shirley's opinion as ordered. The court's remand order did not instruct the ALJ to conduct a *Newton* analysis, and as discussed below, the court finds none was required.

Under the applicable regulatory framework, unless the ALJ gives a treating physician's opinion controlling weight, in deciding the weight to be given to such a medical opinion the ALJ

will consider the following factors: (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (5) the specialization of the treating physician. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) (citing 20 C.F.R. § 404.1527). Due to the emphasis placed on the opinions of treating physicians under 20 C.F.R. § 404.1527, the Fifth Circuit held in *Newton* that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth" in that regulation. *Id.* at 453 (emphasis in original). This detailed analysis has come to be referred to in this and other courts as a "*Newton* analysis," and the plaintiff argues that one was required in this case. The court disagrees, however, because there is competing first-hand medical evidence from other treating sources in the record contradicting Dr. Shirley's assessment of the plaintiff's upper extremity limitations.

As the ALJ pointed out in the decision, the record reflects physical examinations of the plaintiff's upper extremities by medical providers other than Dr. Shirley – both before and after Dr. Shirley's RFC assessment – that showed no significant issues. For example, in December of 2016, Dr. Mitias found that despite complaints of pain, the plaintiff had full range of motion and 5/5 strength of the bilateral shoulders. Likewise, in December of 2018, Dr. Silver conducted a thorough examination and found full range of motion and 5/5 strength of the bilateral upper extremities. These normal physical examinations by other providers constitute competing first-hand medical evidence from other treating sources that contradict the extreme limitations assessed by Dr. Shirley. *See Rollins v. Astrue,* 464 F.App'x 353, 358 (5th Cir. 2012) (finding

normal physical examination by other provider constituted reliable medical evidence contradicting treating source's opinion); *Zimmerman v. Astrue,* 288 F.App'x 931, 935 (5th Cir. 2008) (finding normal physical examination by other provider and MRIs indicating only mild problems constituted competing first-had medical evidence contradicting treating source's opinion). As such, the ALJ was not required to conduct a *Newton* analysis before rejecting Dr. Shirley's RFC assessment.

Under the applicable regulatory framework, while it is true that the opinion of a treating physician ordinarily should be afforded considerable weight in determining disability, "[t]here are exceptions to this principle." *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir. 1985). "The ALJ may give less weight to a treating physician's opinion when 'there is good cause shown to the contrary,'" such as "when his statement as to disability is 'so brief and conclusory that it lacks strong persuasive weight.'" *Id.* (internal footnotes omitted). The "questionnaire" format typifies "brief or conclusory" testimony. *Foster v. Astrue,* 410 F.App'x 831, 833 (5th Cir. 2011).

In the present case, the "Residual Functional Questionnaire" completed by Dr. Shirley typifies a brief or conclusory statement. The section of the questionnaire asking for Dr. Shirley's medical findings supporting his assessment is blank. Further, the assessment is confusing and internally inconsistent. For example, Dr. Shirley has marked that the plaintiff is limited to lifting and/or carrying 10 pounds both occasionally *and* frequently. Also, whereas in one section of the questionnaire Dr. Shirley has marked that the plaintiff is "unlimited" in handling, fingering, and feeling, in another section he has marked that the plaintiff is limited to *occasional* handling and *frequent* fingering and feeling bilaterally. It being unclear exactly what limitations Dr. Shirley intended to assess, the court finds there is good cause to give the assessment less than controlling

weight. This being the case, the question becomes simply whether the ALJ's less restrictive RFC is supported by substantial evidence in the record. The court concludes that it is.

As the ALJ discusses in the decision, in addition to the aforementioned unremarkable physical examinations by other treatment providers, the notes of Dr. Shirley's own examinations of the plaintiff reflect either no limitations or mild limitations in ranges of motion of the shoulders and arms and normal grip strength. Also, a nerve conduction study of the plaintiff's upper extremities showed normal findings and no related cervical issues. This evidence constitutes "more than a scintilla" of evidence and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted).

The plaintiff complains that the ALJ's decision contains no discussion of certain other medical evidence that the plaintiff contends supports a more restrictive RFC, such as a physical examination at Mitias Orthopaedics in July of 2017 showing 4/5 rotator cuff strength throughout, and treatment notes of Curtis Glidewell, MD reflecting the plaintiff's complaints of numbness of the upper extremities on one occasion is 2018 and on another occasion in 2019. However, "[t]he ALJ is not required to recite every scrap of evidence which the claimant considers helpful to [his] case." *Hall v. Barnhart,* 31 Fed.Appx. 839 (5th Cir. 2002) (per curiam). "That the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence." *Castillo v. Barnhart,* 151 Fed.Appx. 334, 225 (5th Cir. 2005) (per curiam). The court has no reason to believe that the ALJ failed to consider all the evidence in this case, and the plaintiff's argument amounts to a request that the court reweigh the evidence in her favor, which the court may not do.

For these reasons and for those announced on the record at the conclusion of oral arguments in

this case, the Commissioner's decision is AFFIRMED.

    SO ORDERED AND ADJUDGED, this, the 12th day of October, 2023.

                                        /s/ Roy Percy
                                        UNITED STATES MAGISTRATE JUDGE